# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Rodney Ushery,
    Petitioner

     vs                 Case No. 1:03cv933
                       (Weber, S.J.; Black, M.J.)

Michael Sheets,[1]
    Respondent

---

### REPORT AND RECOMMENDATION

---

    Petitioner, an inmate in state custody at the Ross Correctional Institution in Chillicothe, Ohio, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition and respondent's "Answer/Return Of Writ." (Docs. 1, 6).

### Procedural Background

    On October 28, 1998, petitioner was indicted by the Hamilton County, Ohio, grand jury on one count of felonious assault as defined in Ohio Rev. Code §

---

[1] In the petition, petitioner properly named as respondent Pat Hurley, who was then Warden of Ross Correctional Institution (RCI), where petitioner is incarcerated. However, since the time petitioner initiated this action, Pat Hurley was replaced by Michael Sheets as RCI's Warden. Because Michael Sheets is the individual who currently has custody of petitioner, the caption of this case is hereby changed to reflect the proper party respondent. *See* Rule 2, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.

2903.11(A)(1) with an attached repeat violent offender specification, and one count of escape as defined in Ohio Rev. Code § 2921.34(A).  (Doc. 6, Ex. 1).   The incident giving rise to the felonious assault charge and repeat violent offender specification was summarized by the Ohio Court of Appeals on direct appeal as follows:

> . . . .Ushery administered a severe beating on his girlfriend, striking her with his fists and ultimately lifting her off the ground and flinging her to the floor headfirst.  He inflicted severe, permanent and disfiguring injuries to her face, neck, and spine.  At the time of the offense, he was on parole for drug trafficking.  He later conceded at trial that, in 1979, he had been convicted of voluntary manslaughter and sent to prison.

(*Id.,* Ex. 9, p. 1).

Petitioner waived his right to a jury trial.  (*Id.,* Ex. 2).  After a trial before the court, petitioner was found guilty as charged.  (*Id.,* Exs. 3-4).  On April 19, 1999, the trial court dismissed the escape charge and sentenced petitioner to consecutive terms of imprisonment of eight (8) years for the felonious assault offense and ten (10) years on the repeat violent offender specification.  (*Id.,* Ex. 5).

With the assistance of counsel, petitioner filed a timely appeal to the Ohio Court of Appeals, First Appellate District.  In his brief on appeal, petitioner presented twelve assignments of error, which included the following claims:

> **Second Assignment of Error:**  The trial court erred to the prejudice of defendant-appellant when it found that he was a repeat violent offender.  Appellant requests appel[l]ate review of his repeat violent offender sentence pursuant to R.C. §2953.08.

****

> **Sixth Assignment of Error:**  Appellant was not given a fair trial due to the inherent bias which arose from the fact that the trial judge presided over appellant's [prior] trial involving a charge of voluntary manslaughter.

2

****

**Eighth Assignment of Error:**  Appellant received ineffective assistance of counsel when defense counsel failed to file a motion for a hearing on the repeat violent offender specification due to the fact that the underlying charge was more than ten years old.

(*Id.,* Ex. 6).[2]

On June 7, 2000, the Ohio Court of Appeals issued a Judgment Entry overruling petitioner's assignments of error and affirming the trial court's judgment.  (*Id.,* Ex. 9).  Petitioner's counsel sought leave to appeal to the Supreme Court of Ohio, asserting as propositions of law three claims of error that had been raised on direct appeal.  (*See id.,* Ex. 10).  On October 4, 2000, the Supreme Court of Ohio denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question."  (*Id.,* Ex. 12).

A month later, on December 5, 2000, petitioner filed a *pro se* application for delayed reopening of his appeal pursuant to Ohio R. App. P. 26(B) with the Ohio Court of Appeals, First Appellate District.  (*Id.,* Ex. 13).  In the application, petitioner claimed in part that his appellate counsel was ineffective because he did not argue as an assignment of error that petitioner's trial counsel provided ineffective assistance when he "failed to file Motion to Disqualify - recuse judge." (*Id.,* p. 3).  As "cause" for his delay in filing, petitioner contended that he lacked the legal training and experience to prepare and file the reopening application in a timely manner; he also claimed that he had "just discovered [the] obvious error of law" which should have been raised by his counsel on appeal.  (*Id.,* pp. 2-3).

On July 27, 2001, the Ohio Court of Appeals denied petitioner's reopening application because it was untimely filed and petitioner failed to show good cause for his delay in filing.  (*Id.,* Ex. 15).  Petitioner appealed this decision to the Supreme Court of Ohio, which dismissed the appeal on October 24, 2001 "as not involving any substantial constitutional question."  (*Id.,* Ex. 17).

---

[2]Apparently, petitioner's counsel asserted the first four assignments of error on petitioner's behalf, but also included in the appellate brief eight additional assignments of error raised *pro se* by petitioner.  (*See* Doc. 6, Ex. 9, p. 4).

3

On September 29, 1999, approximately five months after his conviction and during the pendency of his direct appeal before the Ohio Court of Appeals, petitioner also filed a *pro se* "petition to vacate and/or set aside judgment of conviction and/or sentence" pursuant to Ohio Rev. Code § 2953.21 with the Hamilton County Common Pleas Court. (*Id.,* Ex. 18). In this post-conviction petition, petitioner claimed his trial counsel provided ineffective assistance because he coerced petitioner into waiving his right to a jury trial. (*Id.*). Seven months later, on May 3, 2000, petitioner filed a motion for leave to amend his post-conviction petition to include the additional claim that his trial counsel provided ineffective assistance by failing to "investigate, interview, and subpoena possible witnesses [whose] testimony could have change[d] the outcome of trial." (*Id.,* Ex. 21).

On August 20, 2001, the Common Pleas Court denied petitioner's petition for post-conviction relief, as well as his motion for leave to amend the petition to add a second ineffective assistance of trial counsel claim. (*Id.,* Ex. 24). In so ruling, the court reasoned that petitioner's claim alleged in the original petition that his trial counsel improperly coerced him into waiving his jury trial right was "based on matters in the record," was "not supported by evidentiary documents," and was barred from review "by res judicata" because it "could have been raised on direct appeal." (*Id.*, pp. 1-2). The court further concluded that petitioner had not demonstrated the affidavits submitted in support of his motion to amend the petition were "unavailable" at the time he filed his original petition seven months earlier, and in any event, had "failed to show . . . his trial counsel violated a substantial duty by failing to interview and subpoena certain witnesses to be present at trial." (*Id.,* p. 2).

With the assistance of counsel, petitioner appealed this decision to the Ohio Court of Appeals, First Appellate District, claiming in part that his trial counsel was ineffective for counseling waiver of his jury trial right and "in failing to interview and call exculpatory witnesses." (*Id.,* Ex. 25). On July 19, 2002, the Ohio Court of Appeals overruled the assignments of error and affirmed the trial court's judgment. (*Id.,* Ex. 27).

Petitioner's counsel next sought leave to appeal to the Supreme Court of Ohio. On December 28, 2002, the Supreme Court of Ohio denied leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 30).

4

With the assistance of the same attorney who represented him on appeal in the state post-conviction proceedings, petitioner filed the instant petition for writ of habeas corpus on December 30, 2003.  In the petition, petitioner alleges the following grounds for relief:

> **Ground One:**  Counsel was ineffective during trial when he (1) "failed to interview and call to the stand two key witnesses who would have refuted the State's allegations;" (2) counseled petitioner "to waive a jury trial in this case, in light of the fact that the court had presided over another trial involving the Petitioner which resulted in a manslaughter conviction;" and (3) failed to file a motion for the recusal of the trial judge, who had presided over his prior voluntary manslaughter trial.
>
> **Ground Two:**  The trial court imposed a sentence in violation of due process by determining petitioner was a repeat violent offender without making "adequate findings" under Ohio's Repeat Violent Offender statute.

(*See* Doc. 1, pp. 6, 8 & "Memorandum In Support Of 28 U.S.C. § 2254 Motion").

In the return of writ, respondent does not argue, nor does the record reflect, that the petition is barred from review on statute of limitations grounds.  Moreover, it appears that petitioner has exhausted all available state remedies with respect to his grounds for relief.  Therefore, the Court will proceed to address petitioner's claims in light of other arguments asserted as defenses by respondent in the return of writ.

## OPINION

### A.  Petitioner Has Waived One Of His Ineffective Assistance Of Trial Counsel Claims Alleged In Ground One; However, The Remaining Two Claims Alleged In Ground One Are Subject To Review On The Merits

In Ground One of the petition, petitioner has alleged that his trial counsel provided ineffective assistance because he advised petitioner to waive his right to a jury trial; failed to file a motion for the recusal of the trial judge; and failed to

5

interview and call two "key" witnesses for the defense.  (Doc. 1, p. 4 & attached memorandum).  In the return of writ, respondent contends that petitioner has waived these claims due to his procedural default in failing to present them as assignments of error on direct appeal.  (Doc. 6, Brief, p. 10).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v.  Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default relied on to preclude review of the merits of the claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, his claims for habeas corpus relief are subject to dismissal with prejudice on the ground that they are waived.  *See O'Sullivan,* 526 U.S. at 847-848;  *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).  If, because of a procedural default, petitioner has not had his claims considered by the state's highest court and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner alleged on direct appeal that he was denied effective assistance of counsel only because his trial attorney failed to file a motion for a hearing on the repeat violent offender specification when the underlying conviction

6

was over ten years old. As respondent has argued, petitioner did not assert on direct appeal any of the specific instances of ineffective assistance that are alleged as grounds for relief in the instant petition.

Respondent concedes in the return of writ that petitioner presented claims in the state post-conviction proceedings alleging that his trial counsel provided ineffective assistance in advising him to waive his right to a jury trial and in failing to interview and call two defense witnesses. (*See* Doc. 6, Brief, p. 10). The state trial court refused to allow petitioner to amend the petition seven months after its filing to include the claim involving counsel's failure to interview and call the two witnesses. Moreover, the state trial court found the claim involving petitioner's jury trial waiver was record-based and thus barred from review on state *res judicata* grounds. On appeal from the trial court's decision, the Ohio Court of Appeals addressed and rejected the two claims on the merits. (*See id.,* Ex. 27, pp. 3-7).

In contrast, petitioner never alleged that his trial counsel provided ineffective assistance in failing to file a motion for the recusal of the trial judge as an independent claim of error to the state courts. He did, however, contend in his application for reopening of his appeal that his appellate counsel was ineffective in failing to raise the claim as an assignment of error on appeal. The ineffective assistance of appellate counsel claim was not reached by the Ohio Court of Appeals, which instead dismissed petitioner's reopening application on the state procedural ground that the application was untimely filed and petitioner had not demonstrated "good cause" for his delay in filing as required under Ohio R. App. P. 26(B).

It is well-settled that on federal habeas review of a state conviction, the court may be barred from considering an issue if the state judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *Harris,* 489 U.S. at 260-62. The "adequate and independent state ground" doctrine has been applied to state decisions refusing to address the merits of a federal claim because of violations of state procedural rules. *Id.* at 261; *Sykes,* 433 U.S. at 86-87; *see also McBee,* 763 F.2d at 813. An adequate and independent finding of procedural default will preclude habeas corpus review of the federal claim, unless as discussed above, *see supra* p. 6, the petitioner can satisfy the cause and prejudice standard or demonstrate that failure to consider the federal claim will result in a fundamental

7

miscarriage of justice. *Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262.

A procedural default will not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263. In cases where the last state court to render a reasoned opinion on the claim explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

The rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the state courts is deemed adequate or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey,* 395 F.3d at 679 (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir.), *cert. denied,* 531 U.S. 940 (2000)); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992), *cert. denied,* 507 U.S. 932 (1993). To be deemed "regularly followed," a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n. 6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000), *cert. denied,* 531 U.S. 1082 (2001). In addition, adequacy requires application of the rule "evenhandedly to all similar claims." *Hathorn v. Lovorn,* 457 U.S. 255, 263 (1982); *Maes v. Thomas,* 46 F.3d 979, 986 (10th Cir.), *cert. denied,* 514 U.S. 1115 (1995).

The Ohio Court of Appeals was the last state court in this case to issue a reasoned opinion addressing the two ineffective assistance of counsel claims that were raised by petitioner in his post-conviction petition and motion for leave to amend his post-conviction petition. Although the trial court had relied on state procedural grounds in denying post-conviction relief, the state court of appeals addressed the claims on their merits. Because the Ohio Court of Appeals neither relied on an adequate and independent state ground nor "clearly and expressly" stated it was relying on such a ground in affirming the trial court's judgment, this Court concludes that petitioner has not waived the ineffective assistance of counsel claims that were presented to and addressed on the merits by the state appellate court in the post-conviction proceedings.

On the other hand, it appears that petitioner has waived the ineffective

assistance of counsel claim stemming from his counsel's failure to file a motion for recusal of the trial judge.  Petitioner committed a procedural default because he never presented the claim to the state courts for consideration as an independent claim of error.  Because he thus did not provide the state courts with an opportunity to correct the alleged constitutional error, he has waived the claim unless he can show cause for the default and actual prejudice as a result of the alleged error, or demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice."  *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has not demonstrated that a fundamental miscarriage of justice will occur if the procedurally-defaulted ineffective assistance of counsel claim is not considered on the merits.  Petitioner did contend in his state reopening application that his appellate counsel was ineffective in failing to present it as an assignment of error on direct appeal.  Ineffective assistance of appellate counsel may constitute cause for a procedural default,  *Murray,* 477 U.S. at 488, unless that claim also has been procedurally defaulted, *Edwards v. Carpenter,* 529 U.S. 446, 452 (2000); *Richey v. Mitchell*, 395 F.3d 660, 679 (6th Cir. 2005).  Here, it appears that petitioner also procedurally defaulted his ineffective assistance of appellate counsel claim.

 Under Ohio R. App. P. 26(B), petitioner was required to file his application for reopening "within ninety days from journalization of the appellate judgment" unless [he] showed "good cause for filing at a later time."  Petitioner failed to file his application within the requisite ninety-day period.  The Ohio Court of Appeals, which was the only state court to issue a reasoned opinion in the matter, clearly and expressly relied on petitioner's procedural default in overruling his reopening application as untimely filed.[3]  (*See* Doc. 6, Ex. 15).  In so ruling, the court rejected petitioner's arguments asserted as "good cause" for his delay in filing as follows:

---

[3]The Supreme Court of Ohio's later unexplained decision summarily dismissing the appeal "as not involving any substantial constitutional question" must be presumed to rest on the same procedural default.  *Taqwiim v. Johnson,* 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at **3 (6th Cir. Aug. 22, 2000) (unpublished) (citing *Levine v. Torvik,* 986 F.2d 1506, 1517 n.8 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), and *overruled in part on other grounds by Thompson v. Keohane,* 516 U.S. 99 (1995), and *Ylst,* 501 U.S. at 803-04), *cert. denied,* 531 U.S. 1089 (2001).

. . . .Appellant has failed . . . to show good cause for filing his application almost six months after this Court's judgment was journalized, and thus well beyond the ninety days permitted by App.R. 26(B)(2)(b).  Ignorance of, or inexperience with, the law does not constitute good cause for the untimely filing of an application for reopening.  See *State v. Pierce* (1996), 75 Ohio St.3d 453, 659 N.E.2d 1252; *State v. Reddick* (1995), 72 Ohio St.3d 88, 647 N.E.2d 784.

(*Id.*).

The state law ground relied on by the Ohio appellate court in refusing to grant a reopening of petitioner's appeal, which turned on the "good cause" requirement in Rule 26(B), constitutes an adequate basis for the state courts' decision.  In December 2000, when petitioner filed his reopening application, it was a well-established, regularly followed practice in Ohio for the courts to foreclose review of ineffective assistance of appellate counsel claims brought in untimely applications for reopening.  *Monzo v. Edwards,* 281 F.3d 568, 577-78 (6th Cir. 2002).[4]

In *Monzo,* the Sixth Circuit reasoned:

Our review of Ohio law leads us to conclude that there was sufficient guidance as to what would not constitute good cause at the time the rule was applied in this case.  We do not dwell on the decisions issued shortly after the *Murnahan* decision, as the Ohio courts have had several years since then to consider the "good cause" requirement. . . . The Ohio Supreme Court shed light on the appropriate focus for

_____

[4]*See also Knuckles v. Brigano,* 70 Fed.Appx. 830, 841 (6th Cir. July 22, 2003) (not published in Federal Reporter), *cert. denied,* 540 U.S. 1113 (2004); *Lewis v. Randle,* 36 Fed.Appx. 817, 819 (6th Cir. Apr. 30, 2002) (not published in Federal Reporter), *cert. denied,* 537 U.S. 1137 (2003); *cf. Carpenter v. Edwards,* 113 Fed. Appx. 672, 677 (6th Cir. Oct. 28, 2004) (not published in Federal Reporter) (holding that Rule 26(B) was not regularly followed in 1994, but by 1998, application of rule had been regularized); *see generally Richey,* 395 F.3d at 679-80 (in April 1994, when petitioner moved to reopen his appeal, the Ohio R. App. P. 26(B)'s "good cause" requirement was not firmly established or regularly followed, and therefore did not constitute an adequate and independent state procedural rule).

determining good cause under Rule 26(B) in *State v. Reddick,* 72 Ohio St.3d 88, 647 N.E.2d 784, 786 (1995). . . .  That is, the Court in *Reddick* stressed that:

> Neither *Murnahan* nor App.R. 26(B) was intended as an open invitation for persons sentenced to long periods of incarceration to concoct new theories of ineffective assistance of appellate counsel in order to have a new round of appeals.  Rather, both were intended to allow the belated presentation of colorable claims that defendants/appellants were prevented from presenting timely by particular circumstances.  Lack of effort or imagination, and ignorance of the law, are not such circumstances and do not automatically establish good cause for failure to seek timely relief.

647 N.E.2d at 786.  Further, "issues of ineffective assistance of appellate counsel must be raised at the first opportunity to do so." *State v. Williams,* 74 Ohio St.3d 454, 659 N.E.2d 1253, 1254 (1996). *See also State v. Franklin,* 72 Ohio St.3d 372, 650 N.E.2d 447, 448 (1995) (ignorance of the law does not justify untimely filing of a motion to reopen)[.] . . .  Thus, we find the state courts relied on an adequate and independent state procedural ground to foreclose review of petitioner's *Murnahan* claim.

*Monzo,* 281 F.3d at 578 (some citations omitted).

As discussed above in *Monzo*, 281 F.3d at 578, the "good cause" requirement was consistently applied by December 2000 to reject the excuse asserted by petitioner that he lacked the legal training and experience to perfect a timely reopening application on his own.  Moreover, petitioner's contention that he had only "just discovered" the error of law, is belied by the record.  In his sixth assignment of error on direct appeal, which apparently was brought up by petitioner himself, *see supra* p. 3 n.2, petitioner claimed that he was denied a fair trial because the trial judge, who had presided over his prior voluntary manslaughter trial, was biased against him.  Petitioner, therefore, was well aware at the time of his direct appeal of all the facts underlying the ineffective assistance of trial counsel claim that he belatedly argued should have been raised by his counsel

on appeal.

Accordingly, in sum, the Court concludes that petitioner has not waived the two ineffective assistance of trial counsel claims that were presented to and addressed on the merits by the Ohio Court of Appeals in the state post-conviction proceedings.  However, petitioner has waived the ineffective assistance of counsel claim never asserted as an independent claim to the state courts, stemming from his trial attorney's failure to file a motion for recusal of the trial judge.  Petitioner has not demonstrated that a fundamental miscarriage of justice will occur if that claim is not considered by this Court.  Moreover, the Court is precluded from considering as "cause" for petitioner's default the ineffective assistance of appellate counsel claim raised by petitioner in his reopening application, which was denied by the state courts on "adequate" and "independent" state procedural grounds.

**B.  Petitioner Is Not Entitled To Relief Based On The Un-waived Ineffective Assistance Of Counsel Claims Alleged In Ground One Of The Petition**

As discussed above, *see supra* pp. 8, 12, petitioner has not waived two of the ineffective assistance of trial counsel claims that are alleged in Ground One of the petition, which stem from his attorney's advising him to waive his right to a jury trial and failure to interview and call two defense witnesses.   Petitioner asserts in his memorandum in support of the petition that he is entitled to an evidentiary hearing on these claims, but this Court concludes that the claims are capable of resolution based on the present record.

As discussed above, *see supra* p. 8, the Ohio Court of Appeals was the last state court to render a reasoned opinion addressing these claims in the state post-conviction proceedings.  The court made findings of fact, which are presumed correct under 28 U.S.C. § 2254(e)(1),[5] and ruled in relevant part as follows:

---

[5]28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner, who is represented by counsel in the instant proceeding, has not disputed the state appellate court's factual findings; nor does the record contain clear and convincing evidence to rebut the Ohio court's factual findings quoted herein.  Therefore, petitioner has not met his burden of demonstrating that such findings are erroneous.

12

. . . .To prevail on a claim of ineffective assistance of trial counsel, a postconviction petitioner must demonstrate (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced him.  See *Strickland v. Washington* (1984), 466 U.S. 668, 694. . . .  To establish prejudice, the petitioner must demonstrate that counsel's deficient performance "so undermined the proper functioning of the adversarial process that the trial could not have reliably produced a just result." *State v. Powell* (1993), 90 Ohio App.3d 260, 266, 629 N.E.2d 13 (citing *Lockhart v. Fretwell* [1993], 506 U.S. 364 . . ., and *Strickland,* supra).

In support of his challenge to counsel's competence in "advis[ing]" or "coercing" his jury waiver, Ushery submitted the following: (1) the state's sentencing memorandum; (2) defense counsel's response to the state's sentencing memorandum; (3) a portion of the transcript identified by Ushery in his affidavit as that of an "interview by [his] Parole Officer" with the victim, offered to show that the victim had "provoked" Ushery into assaulting her; (4) copies of two letters from Ushery, the first to trial counsel requesting an affidavit attesting to counsel's promise of leniency in exchange for his waiver of a jury trial, and the second to the Grievance Committee of the Cincinnati Bar Association complaining that trial counsel had "deceived" him into waiving a jury trial with the promise that the prosecutor would not seek the maximum penalty if he were found guilty; (5) the affidavit of Ushery's father declaring that he had not perceived the victim as being "under duress" when she had visited Ushery in Michigan in 1997; (6) two photographs of two smiling people, presumably Ushery and the victim, at an unspecified time and in an unspecified place; and (7) Ushery's affidavit quoting counsel's "representations" to him, following counsel's "discuss[ions]" with the court and the assistant prosecutor, "that 'if I waived jury trial the judge would be more lenient at any possible sentencing on the case' ***."

Ushery predicated his jury-waiver claim upon the proposition that his waiver was not knowing, voluntary or intelligent.  The claim depended for its success upon Ushery's assertions (1) that his trial counsel "coerced" or deceptively induced his waiver of a jury trial

with the promise that the trial court would be lenient in sentencing him, and (2) that he had, upon the advice of trial counsel, waived a jury trial without knowledge that his guilt would be determined by the judge who had also presided over his previous trial.

The record of the proceedings at trial shows that Ushery executed a written jury waiver, and that, before accepting the waiver, the trial court personally addressed Ushery and advised him as follows:

> Now, you understand what I'm saying is that by waiving your constitutional right to a trial by jury, you're letting me decide the evidence.

In the course of the colloquy with the court, Ushery acknowledged his understanding of the implications of his waiver and stated that the waiver had not been secured by "special promises or representations" by trial counsel, the prosecution, or the court.

Thus, the record belies Ushery's assertion that he did not know, before waiving his right to a jury trial, that the judge who presided over his previous trial would determine his guilt in his felonious-assault trial. Moreover, of the outside evidence submitted with the petition, only the declarations by Ushery contained in his own affidavit and in his letters to trial counsel and to the bar association's grievance committee supported his assertion that his waiver had been induced by a promise of leniency. Such self-serving declarations were insufficient as a matter of law to rebut evidence of record to the contrary. See *State v. Kapper* (1983), 5 Ohio St.3d 36, 448 N.E.2d 823. Accordingly, we hold that the trial court properly denied Ushery's jury-waiver claim, when Ushery failed to sustain his initial burden of submitting with his petition evidentiary materials setting forth sufficient operative facts to demonstrate substantive grounds for relief. . . .

In the claim for relief presented by way of amendment, Ushery challenged his trial counsel's competence in failing to present at trial the testimony of two eyewitnesses to the victim's demeanor during an unspecified number of visits with Ushery at his residence in Detroit,

14

Michigan, during the summer of 1997. In support of the claim, Ushery submitted his own affidavit, by which he presented three photographs depicting the "loving and caring relationship" that he and the victim had "enjoyed" that summer, and the affidavits of the two witnesses, who averred that the victim did not appear to them to be under "duress" during these visits.

In his appellate brief, Ushery characterizes the witnesses' proposed testimony as "exculpatory." To the contrary, the probative value lay in its tendency to impeach the victim's credibility to the extent that she had testified at trial that Ushery's May 1997 assault upon her had caused her to fear him, that she had visited him in Michigan only once, in August 1997, and only upon her belief that he had "changed," that he had beaten her upon her arrival, and that she had remained there a second day against her will and under a constant threat of death or further bodily harm.

As to these matters, which did not provide the basis for any criminal charge against Ushery, Evid.R. 608(B) permitted Ushery's trial counsel to inquire, upon cross-examination of the victim, into specific instances of her conduct for the purpose of impeaching her credibility. This counsel did, at length and in great detail, at trial. But the rule precluded the introduction of extrinsic evidence, such as the proposed testimony of the two witnesses, to prove specific instances of the victim's conduct for purposes of impeachment. Thus, counsel cannot be said to have violated a duty to Ushery in failing to present this testimony at trial. Accordingly, we hold that the trial court properly denied Ushery's second claim, when he again failed to sustain his initial burden of submitting with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. . . .

(Doc. 6, Ex. 27, pp. 4-7).

Under the applicable standard of review set forth in 28 U.S.C. § 2254(d), petitioner is not entitled to relief in this federal habeas corpus proceeding unless the state court's adjudication of his constitutional claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established

federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998). A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942.

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.). Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942. The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

In this case, the Ohio Court of Appeals correctly identified and applied the proper standard of review that was clearly established by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984), in evaluating petitioner's ineffective assistance of counsel claims. As the state court recognized, in order to establish a Sixth Amendment violation under *Strickland*, the petitioner must

16

demonstrate: (1) his attorney made such serious errors he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) his attorney's deficient performance prejudiced the defense by undermining the reliability of the trial result.  *See id.* at 687.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *See id.* at 688.  Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct.  *Id.* at 689.  In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  *See id.*

In order to satisfy the second "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the trial and appeal proceedings would have been different.  *See id.* at 694.  Petitioner has met his burden if he shows that the result of his trial would "reasonably likely have been different absent the errors."  *See id.* at 695.

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance.  The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground.  *See id.* at 697.

Here, with respect to petitioner's jury-waiver claim, the Ohio Court of Appeals reasonably determined that petitioner had not presented sufficient credible evidence to support his contention that his trial counsel improperly induced him to waive his jury trial right by a promise of leniency in sentencing.  In light of petitioner's statements on the record to the contrary–i.e., that his waiver had not been "secured by 'special promises or representations' by trial counsel, the prosecution, or the court," the state appellate court properly found under state law that the outside evidence consisting only of petitioner's own, self-serving

17

statements was insufficient to demonstrate a factual basis for this claim.[6]

In addition, it was reasonable for the Ohio Court of Appeals to reject petitioner's contention that his trial counsel improperly induced him to proceed to trial before the same judge who had presided over his prior voluntary manslaughter trial. Petitioner does not dispute the state court's factual finding that before his jury waiver was accepted, the trial judge personally addressed him and informed him that "by waiving your constitutional right to a trial by jury, you're letting me decide the evidence." Based on this finding, it was reasonable for the court to then conclude that "the record belies [petitioner's] assertion that he did not know before waiving his right to a jury trial, that the judge who presided over his previous trial would determine his guilt."[7]

Petitioner does not argue, nor is there any indication in the record, that his counsel was aware of even the possibility that the trial judge had presided over petitioner's prior criminal trial. Moreover, even if petitioner's counsel should have investigated the matter, no prejudice is shown given the state court's finding that petitioner waived his jury trial right knowing that the judge who presided over his previous trial would decide the case. Approximately eighteen years had elapsed between petitioner's prior trial in 1979 and his 1998 felonious assault trial. It is difficult for this Court to believe that the trial judge, who presided over innumerable other trials in the interim period, would remember petitioner or the details of his prior trial so many years earlier. On the other hand, it is difficult to believe as petitioner argues in his memorandum in support of the petition that

---

[6]*See State v. Kapper,* 448 N.E.2d 823, 826 (Ohio) (a defendant's "own self-serving declarations or affidavits alleging a coerced guilty plea are insufficient to rebut the record on review which shows the plea was voluntary"), *cert. denied,* 464 U.S. 856 (1983); *see also State v. Buhrman,* No. 2003-CA-55, 2004 WL 405735, at *4 (Ohio Ct. App. Mar. 5, 2004) (unpublished) (on affirming the dismissal of a post-conviction petition without a hearing, the court pointed out that the Supreme Court of Ohio's *Kapper* decision stands for the proposition that "where the affidavit of a petitioner for post-conviction relief is belied by the record, the petitioner's own, self-serving affidavit is not sufficient to require the trial court to hold an evidentiary hearing").

[7]It is noted that there is no evidence in the record conclusively establishing that the trial judge in fact presided over petitioner's prior criminal trial. However, in the absence of any evidence refuting or confirming petitioner's allegations on this point, the Court assumes that petitioner's allegations are true.

petitioner would not immediately recognize the judge who presided over the trial that resulted in his only other conviction for a violent crime.

With respect to petitioner's final claim that his trial counsel should have investigated and called certain defense witnesses, the Ohio Court of Appeals reasonably determined that petitioner had not demonstrated his counsel's conduct was "deficient" under the first prong of the *Strickland* test.  As the state court concluded, the testimony of the two witnesses, whom petitioner has claimed are "key," was favorable to the defense only to the extent the proposed testimony would have served to impeach the credibility of the victim, who testified against petitioner at trial.[8]  The court determined that as permitted under Ohio R. Evid. 608(B), petitioner's counsel sought to impeach the victim's credibility at trial by extensively cross-examining her about "specific instances of her conduct." However, as the Ohio Court of Appeals recognized, even if petitioner's counsel had investigated and sought to call the two "key" defense witnesses to the stand to further impeach the victim's credibility, he would not have been permitted to do so.  Ohio R. Evid. 608(B) expressly prohibits the admission of such "extrinsic evidence" of "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness."   The Ohio Court of Appeals, therefore, correctly concluded that counsel's challenged conduct did not fall below an objective standard of unreasonableness based on the circumstances of this case.

Accordingly, in sum, this Court concludes that the Ohio Court of Appeals' adjudication of the un-waived ineffective assistance of counsel claims alleged in Ground One of the petition neither is contrary to nor involves an unreasonable application of the applicable standard of review enunciated by the Supreme Court in *Strickland*.  Therefore, petitioner is not entitled to habeas corpus relief based on such claims.

---

[8]In his memorandum in support of the petition, petitioner mentions at one point that his trial counsel should have introduced the victim's "statement, made prior to trial, that she had provoked the Petitioner, and that her injuries were not as serious as she led [the jury] to believe in court."  To the extent petitioner seeks to raise this issue as yet another ineffective assistance of counsel claim, the claim is waived because petitioner never presented it to the state courts for their consideration either on direct appeal, in the state post-conviction proceedings, or in his application for reopening of his appeal.  *See supra* pp. 5-6.

### C.  Petitioner Is Not Entitled To Relief Based On His Claim Alleged In Ground Two Challenging The Sentence Imposed On The Specification

In Ground Two of the petition, petitioner alleges he was denied due process when the trial court sentenced him to a consecutive ten-year prison term on the repeat violent offender specification without making "adequate findings" as required under Ohio's Repeat Violent Offender statute.  (Doc. 1, p. 8 & attached memorandum).  In the return of writ, respondent contends this claim is waived and, alternatively, lacks merit.  (Doc. 6, Brief, pp. 11-12, 20-21).

As an initial matter, it appears that petitioner raised this claim on direct appeal to the state courts to the extent he argued that "the record indicates that the Trial Court failed to make a meaningful determination, and rather issued a conclusory finding that Appellant's actions in that case satisfied the second prong of R.C. 2929.01(EE)(2) and was an RVO [repeat violent offender]."[9]  (Id., Ex. 6, p. 6).  Contrary to respondent's contention in the return of the writ (see id., Brief, pp. 11-12), the Ohio Court of Appeals did not "clearly and expressly" hold that petitioner waived the claim by failing to object to his sentence at trial or state that it was relying on the state "plain error" standard of review in addressing the claim. (See id., Ex. 9, p. 2).  Rather, the court ruled only that because petitioner did not contest that he had previously served a prison term for voluntary manslaughter, the trial court had "correctly found that [petitioner] met the statutory definition of repeat violent offender under former R.C. 2929.01(EE)."  (Id.).  Therefore, this Court will assume that petitioner has not waived the constitutional claim alleged in Ground Two of the petition and will proceed to address petitioner's arguments for granting relief based on the claim's merits.

Petitioner contends in his memorandum in support of the petition that he is

---

[9]At the time of petitioner's trial, a "repeat violent offender" was defined by statute in relevant part as (1) a person who "has been convicted of or has pleaded guilty to, and is being sentenced for committing, . . . a felony of the first degree set forth in Chapter 2925. of the Revised Code that . . . resulted in serious physical harm to a person"; *and* (2) the person "previously was convicted of . . ., and previously served . . . a prison term for . . . a felony of the first or second degree that resulted in the death of a person or in physical harm to a person, or complicity in or an attempt to commit any of [the listed] offenses[.]" *See* former Ohio Rev. Code § 2929.01(EE), as codified at § 2929.01(DD) for offenses committed through December 31, 2003.

entitled to relief because "a review of the sentencing record . . . will show that the trial court did not make any particular findings supporting the RVO consecutive 10 year sentence in this case" and "there were no facts present to support such an enhancement." (Doc. 1, attached memorandum). The Court rejects this argument.

Although the portion of the sentencing hearing transcript attached as an exhibit to the petition does not contain specific findings by the trial court in support of the enhanced sentence that was imposed, the court indicated that the State had filed a sentencing memorandum, which "very adequately reflects [the] kind of information . . . to be reviewed and considered by the Court." (*Id.,* attached Sentencing Hearing Tr. 306). The sentencing memorandum referred to by the court indeed set forth in detail the reasons for the State's recommendation to sentence petitioner to a total of 18 years in prison, including the 10-year consecutive sentence on the repeat violent offender specification. (*See* Doc. 6, Ex. 6, attached "Sentencing Memorandum"). In any event, it appears clear from the record that petitioner stipulated during trial to his prior conviction for voluntary manslaughter in October 1979, thereby removing the matter of whether petitioner met the statutory definition of a "repeat violent offender" as a factual issue for the trial court to decide. (*See id.*, p. 6 & attached "Sentencing Memorandum," p. 1).

Contrary to petitioner's contention, the trial court issued written "Felony Sentencing Findings" specifically citing the applicable factors in support of the sentences imposed for both the underlying felonious assault offense and the repeat violent offender specification. (*Id.,* attached "Felony Sentencing Findings"). With respect to the repeat violent offender sentence, the court expressly found "before imposing extra 10 years beyond maximum basic prison term" that petitioner was a repeat violent offender; the "[s]imple basic maximum term was insufficient to punish the offender and protect the public because at least one seriousness factor outweighs likelihood that offender will refrain from future crime"; and a "simple maximum would demean the seriousness of the offense because . . . [o]ffender's conduct is more serious than conduct normally constituting the offense." The court went on to find that the imposition of consecutive prison terms was appropriate because petitioner was under parole supervision when the offense was committed, his "criminal history" required a consecutive sentence, and "consecutives [were] necessary to fulfill the purpose of R.C. 2929.11." (*Id.*).

At the sentencing hearing, the trial court expressed concerns about the seriousness of the victim's injuries in this case, which "came very close" to

resulting in the victim's death. (Doc. 1, attached Sentencing Hearing Tr. 305).
The court stated:

> It's hard to believe . . . that a human being could do these kinds of
> things to another human being. It really is. It's terribly distressing.
>
> You were given an opportunity on parole, which apparently you were
> not able to live with, and that makes it even more distressing. But the
> fact of the matter is that there is a high level of violence here which is
> unusually high, and it certainly had to be terrifying to the victim.
>
> We're going to impose sentence with a recognition that this is a case
> that has specifically been designed to consider additional sentences so
> as not to demean the seriousness of what happened as well as the
> result that occurred.

(*Id.,* Tr. 305-06).

It thus appears clear from the record that the trial court reasonably
considered and set forth the relevant factors supporting the sentence that was
imposed, which did not exceed the maximum allowed under state statutory
standards. Accordingly, the Court concludes that petitioner has not demonstrated
he was denied due process during the sentencing proceedings or as a result of the
sentencing decision that was made. Petitioner, therefore, is not entitled to habeas
relief based on his constitutional claim alleged in Ground Two of the petition
challenging the sentence imposed on the repeat violent offender specification.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254
(Doc. 1) be DENIED with prejudice.

2. A certificate of appealability should not issue with respect to the ineffective
assistance of trial counsel claim alleged in Ground One of the petition, which this
Court has concluded is waived and thus barred from review on procedural grounds,
because under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529
U.S. 473, 484-85 (2000), "jurists of reason would not find it debatable whether this

Court is correct in its procedural ruling" as required under the first prong of the *Slack* standard.[10]   A certificate of appealability also should not issue with respect to the claim alleged in Ground Two of the petition and the un-waived ineffective assistance of counsel claims alleged in Ground One, which were addressed on the merits herein, because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

     3.   With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore DENY petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  2/16/06                s/Timothy S. Black

      cbc                                  Timothy S. Black
                                        United States Magistrate Judge

J:\BRYANCC\2006 habeas orders\03-933denypet.waiv-iac-RVOsentence.wpd

---

    [10]Because this Court finds petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner stated a valid constitutional claim.  *See Slack,* 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

———————————————————

Rodney Ushery,
     Petitioner


    vs                        Case No. 1:03cv933
                                 (Weber, S.J.; Black, M.J.)


Michael Sheets,
     Respondent

# NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action brought under 28 U.S.C. § 2254. Any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s)  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).